**Jeffery WHITE, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 71A03–9306–CR–186.

Court of Appeals of Indiana,
Third District.

Feb. 28, 1994.

Transfer Denied April 26, 1994.

John Pinnow, Sp. Asst. to State Public Defender, Greenwood, for appellant-defendant.

Pamela Carter, Atty. Gen., Joseph F. Pieters, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

HOFFMAN, Presiding Judge.

Appellant-defendant Jeffery White appeals from his conviction for battery, a Class C felony.

The facts most favorable to the State disclose that on July 28, 1992, at approximately 5:00 P.M., the victim, Leroy Humbles (Leroy), was at his home located at 1143 Huey Street in South Bend, Indiana. White and William Humbles (William) who had both been drinking earlier that day, arrived at Leroy's house along with Guy Lathion. Shortly afterwards, Don Cutler arrived. Robert Taylor, Charles Humbles (Charles), Leroy's brother, and Amber Overstreet, his cousin, were also present. Cutler and Lathion entered into a brief argument in the front yard which ended when Cutler left.

Leroy, fearing a confrontation with Lathion, decided to find a gun. After making several phone calls and locating one from a friend, he asked Taylor to take him to pick it up. As the men were leaving the house, Leroy saw Lathion arguing with Overstreet. Leroy approached Lathion from behind and punched him in the jaw knocking him to the ground. While these events were taking place, White was standing on the sidewalk behind the men. As Leroy was preparing to hit Lathion another time, a shot was fired. Leroy looked down and noticed that he had been hit by a bullet which went in through his back and out through his front. William and Taylor turned around in the direction where they heard the shot and saw White. Charles saw White holding a gun. Lisa Ellis, Leroy's next door neighbor, also heard the shot and immediately ran to her window where she too saw White holding a gun.

After being shot, Leroy ran into the house to call 911. Lathion and White ran to White's car and left. As the men were leaving, Taylor heard Lathion ask White, "Why did you shoot him?" to which White responded, "Because he shouldn't have hit you."

When the police arrived at the scene, they located a .380 caliber shell casing on the sidewalk. A subsequent police search of White revealed that he had in his possession several rounds of .380 caliber ammunition.

Based on the above facts, White was arrested and charged by information with battery, a Class C felony. After a trial by jury which returned a verdict of guilty, he was sentenced to five years' incarceration. White appeals his conviction.

He raises three issues on appeal. As restated, they are:

(1) whether the trial court erred by allowing Officer Ralph Sczepanski to testify as an expert;

(2) whether the trial court erred in limiting his cross-examination of Officer Richard Powers; and

(3) whether there is sufficient evidence to sustain his conviction.

■ White contends that the trial court erred by allowing Officer Sczepanski to testify as an expert regarding the relative amount of gas released by revolvers and automatics when fired. Officer Sczepanski, relying on his on-the-job practical experience as an evidence technician and police officer, testified that a revolver was more likely to deposit gases on a hand when fired than an automatic weapon. He also stated that more gases will be emitted as the caliber of gun increases. White claims that the State failed to lay a proper foundation that he possessed special knowledge in firearms which would assist the jury on this issue and that his practical experience was insufficient to qualify him as an expert.

■ The determination of whether a witness is qualified to testify as an expert is within the sound discretion of the trial court whose ruling will not be disturbed absent an abuse of discretion. *Corbin v. State* (1990), Ind., 563 N.E.2d 86, 92. To qualify as an expert, the subject matter must be related to some scientific field beyond the knowledge of the average lay person, and the witness must have sufficient skill, knowledge or experience in the field to make it appear that the witness's opinion or inference will aid the jury.[1] *Id.* at 92–93. No precise quantum of knowledge is required if the witness shows a suffi-

cient acquaintance with the subject matter. *Id.* Practical experience alone may be sufficient to qualify a witness as an expert. *See Brackens v. State* (1985), Ind., 480 N.E.2d 536, 542 (despite absence of showing witness had ongoing training in area of fingerprint analysis, witness was still qualified as an expert due to eighteen years' experience in the field).

The record reveals that at the time of the trial, Officer Szcepanski, holding the rank of sergeant, was a nineteen-year veteran of the South Bend Police Department. There he obtained practical experience using firearms and learning their basic operation. For two years prior to trial, he had also served as an evidence technician with the department. In this position, he prepared approximately two dozen gunshot residue samples for Gunshot Residue tests (GSR)[2] to be conducted by the FBI. The record reveals that he was able to demonstrate a familiarity with firearms and their basic operation and an understanding of how gases escaped from both revolvers and automatic weapons when fired. In light of this, it cannot be said that the trial court abused its discretion in allowing him to testify as an expert on this issue.

■ Next, White claims that the trial court abused its discretion by limiting the scope of his cross-examination of Officer Powers. The line of questioning at issue dealt with Officer Powers' familiarity with the victim's address.

■ White is correct that the right of confrontation assured by the Sixth Amendment requires that he be afforded the opportunity to conduct a full, adequate and effective cross-examination. *Braswell v. State* (1990), Ind., 550 N.E.2d 1280, 1282. However, the trial judge has discretion to determine the scope of cross-examination and only a clear abuse of that discretion warrants reversal. *Id.* White must also show how he was prejudiced by the trial judge's actions. *Id.*

The cases cited by White are inapposite because in the present case, White sought to

---

1. The trial in the present case occurred prior to January 1, 1994, the effective date of the newly adopted Indiana Rules of Evidence. Thus, Rule 702, dealing with testimony by experts, does not apply.

2. This is a routine procedure in which the fingers or hands of a subject is swabbed for gunpowder. If sufficient amounts of barium antimony, a chemical found in gunpowder, exists it may be determined that the suspect has recently fired a gun.

elicit information from Officer Powers about a third party's address; he did not seek information about Powers' own address. Also, as the State points out, this subject matter was not addressed on direct examination and it is not apparent how this line of questioning would have elucidated, modified, explained, contradicted, or rebutted any testimony given during direct examination. *See Hicks v. State* (1987), Ind., 510 N.E.2d 676, 679. Moreover, White has failed to show prejudice resulting from the trial judge's actions. He argues that the testimony, if allowed, would have assisted in his defense by clarifying inconsistencies in the testimony of two other witnesses. This argument lacks merit. The witnesses were subject to cross-examination by White. Any inconsistencies in their testimonies could have been exposed at that time.

 White also claims there is insufficient evidence to sustain his conviction. In reviewing the sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. *Fugate v. State* (1993), Ind., 608 N.E.2d 1370, 1374. Rather, we will consider the evidence and the reasonable inferences therefrom which support the verdict. *Id.* A conviction will be affirmed if there is evidence of probative value from which a reasonable trier of fact could infer guilt beyond a reasonable doubt. *Id.*

White was seen with a gun before the shooting and was also spotted holding one moments after the shot was fired. As Leroy was calling for help, White along with Lathion quickly fled. As noted earlier, Taylor heard Lathion ask White, "Why did you shoot him?" to which White responded, "Because he shouldn't have hit you." Moreover, although the bullet that hit Leroy was not found, a .380 caliber shell casing was found by police on the sidewalk, the same ammunition found on White. There exists ample evidence to sustain his conviction. Finding no error, White's conviction is affirmed.

Affirmed.

STATON and RUCKER, JJ., concur.